UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

PAULETTE DICK, : CASE NO. 5:06-cv-1436

Plaintiff, : JUDGE JAMES S. GWIN

vs. : OPINION AND ORDER
: [Resolving Docs. 25, 27, 28 & 29]
MAC'S CONVENIENCE STORES, LLC, :

Defendant. :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On June 12, 2006, Plaintiff Paulette Dick filed a Complaint alleging among other causes of action that have since been withdrawn: (1) pregnancy discrimination; (2) failure to accommodate; (3) violation of public policy; and (4) retaliation. [Doc. 1] On February 12, 2007, Defendant Mac's Convenience Stores, LLC filed a Motion for Summary Judgment as to all Plaintiff's claims. [Doc. 25.] On February 26, 2007, Plaintiff opposed Defendant's Motion for Summary Judgment. [Doc. 27.] On March 5, 2007, Defendant filed a Reply in support of its Motion for Summary Judgment. [Doc. 28.]

For the following reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. Background

On May 12, 1998, Plaintiff began working as a project coordinator for Dairy Mart Stores in Hudson, Ohio. In 2001, Plaintiff switched positions within Dairy Mart and became a maintenance coordinator. In 2002, Defendant acquired Dairy Mart, and Plaintiff continued her employment with

Case No. 5:06-cv-1436
Gwin, J.

Defendant.

At that time, Defendant asked Plaintiff and several other employees to relocate to Defendant's headquarters in Columbus, Indiana. Plaintiff declined the offer to relocate because she did not wish to move her family. In total, approximately 15 of the 100 employees who formerly worked in the Hudson office expressed a desire to remain in Ohio. As such, Defendant opened a satellite office in Twinsburg, Ohio, where Plaintiff remained employed until her termination.

In 2002, Defendant employed four maintenance coordinators. Two maintenance coordinators, Plaintiff and George Young, worked out of Defendant's Twinsburg office. The other two maintenance coordinators worked out of Defendant's Columbus headquarters. In 2004, Defendant hired Rob Roy as maintenance manager and direct supervisor of all four maintenance coordinators. Matt McCure was Roy's direct supervisor. Both Roy and McCure also worked out of Defendant's Columbus headquarters.

Plaintiff has three children. Plaintiff had her first child during her employment with Dairy Mart. Plaintiff's second child, Sara, was born on May 30, 2005, while Plaintiff worked for Defendant. During the months prior to the birth of her second child, Defendant permitted Plaintiff to take time off work as necessary for prenatal care. On May 11, 2005, Plaintiff was granted permission to work from home "a couple of days a week." Plaintiff also received twelve weeks of maternity leave. During the first six weeks of maternity leave, Plaintiff was paid at one third of her normal rate. During the second six-week period, Plaintiff worked from home and received her full salary.

Plaintiff estimates that she requested to leave work early or take days off to care for her children on approximately 20 to 25 occasions. Defendant granted these requests and did not

Case No. 5:06-cv-1436
Gwin, J.

penalize her for these absences. Likewise, Defendant permitted Plaintiff to take additional time off work to tend to her mother's illness and other personal matters without recourse. Both parties agree that Plaintiff's job performance was not a factor in her termination. In actuality, Defendant increased Plaintiff's salary in 2004 and 2005.

In 2004, when Defendant chose to hire Roy as maintenance manager, Plaintiff and her fellow maintenance coordinator, George Young, expressed concern because Roy was scheduled to work in Columbus. On February 6, 2004, McCure emailed Plaintiff and Young to reassure them that their positions would remain in Twinsburg.

In September 2005, Plaintiff's fellow maintenance coordinator, George Young, accepted a new position of project coordinator. At that time, Defendant alleges it was also seeking to hire a fifth maintenance coordinator. Thereafter, Defendant hired two maintenance coordinators who worked out of Defendant's Columbus office, leaving Plaintiff the only maintenance coordinator located in Twinsburg.

Young testified that when he accepted the position of project coordinator, he asked McCure whether Plaintiff would be effected. During a conversation in August 2005, McCure informed Young that there were no plans to relocate Plaintiff's position at that time.

In December 2005, Roy and McCure allegedly discussed the possibility of consolidating all five maintenance coordinator positions in Columbus. These discussions allegedly continued during January 2006. On January 16, 2006, Roy took handwritten notes during a meeting with McCure. These notes listed maintenance "Team Consolidation" as an item discussed during the meeting. Additionally, on January 24, 2006, Roy used Microsoft Outlook's notes function to electronically document the business rationale for consolidation of the maintenance coordinator positions.

Case No. 5:06-cv-1436
Gwin, J.

Roy and McCure allege that the decision to consolidate all maintenance coordinator positions in Columbus was finalized by the end of January 2006. Defendant claims that Roy and McCure made this decision because "it would be more efficient, more productive, and better for team and business synergies and cohesiveness to have all of the maintenance coordinators work together at the same location where they, too, worked rather than managing both a central office and a satellite office." Defendant alleges that Plaintiff had not informed anyone of her pregnancy at the time the decision to consolidate was made.

On February 6, 2006, Plaintiff called Roy and informed him that she was pregnant with her third child. In her deposition, Plaintiff described: "I told him – I called him on the phone and told him I was pregnant and his response to me was, 'Again so soon?' And then he asked me if this was planned, if I planned the pregnancy and then he said, 'Congratulations I guess.'"

On February 8, 2006, Roy and McCure told Plaintiff that her job was being relocated to Columbus. Defendant alleges that Roy and McCure had tried to contact Plaintiff to inform her of the move during the previous week, but they were unable to reach her. Roy and McCure then offered Plaintiff the opportunity to keep her job and move to Columbus. Once again, Plaintiff declined because she did not want to move her family. Plaintiff alleges that no other positions were being relocated to Columbus at that time.

After Plaintiff refused the offer to maintain her employment and move to Columbus, Defendant alleges that it attempted to find Plaintiff another position within the Twinsburg office. When these efforts were unsuccessful, Defendant alleges it communicated with the company's external vendors in search of additional employment opportunities for the plaintiff. When these efforts were similarly unsuccessful, Defendant offered Plaintiff a severance package, which she

Case No. 5:06-cv-1436
Gwin, J.

refused. On February 24, 2006, Defendant terminated Plaintiff's employment.

Subsequently, Defendant hired Beth Claycamp to replace Plaintiff. Claycamp is female and has children. Throughout her employment as maintenance coordinator, Claycamp has worked in Defendant's Columbus headquarters. All five current maintenance coordinators employed by Defendant are female. Four of the five maintenance coordinators have children.

## II. Legal Standard

*A. Summary Judgment*

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case. *Waters v. City of Morristown*, 242 F.3d 353, 358 (6th Cir. 2001). A fact is material if its resolution will affect the outcome of the lawsuit. *Daughenbaugh v. City of Tiffin*, 150 F.3d 594, 597 (6th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id*.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

-5-

Case No. 5:06-cv-1436
Gwin, J.

U.S. 574, 585-86 (1986). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *Id.* at 586. Nor can the nonmoving party "rest upon the mere allegations or denials of the adverse party's pleading." FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *National Enters., Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Celotex*, 477 U.S. at 322. Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 178 (6th Cir. 1996) (internal quotations omitted).

*B. Pregnancy Discrimination*

In her complaint, Plaintiff alleges that Defendant discriminated against her on the basis of her pregnancy pursuant to O.R.C. § 4112.02(A). In order to prove a *prima facie* case of pregnancy discrimination, Plaintiff must show "(1) [she] was pregnant; (2) she was discharged; and (3) she was replaced by a nonpregnant person." *Marvel Consultants v. Ohio Civil Rights Comm'n*, 93 Ohio App. 3d 838, 841 (1994). "The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "'Finally, plaintiff must be allowed to show that the rationale set forth by defendant was only a pretext for unlawful discrimination.'" *Mauzy v. Kelly Servs.*, 75 Ohio St. 3d

-6-

Case No. 5:06-cv-1436
Gwin, J.

578, 582 (1996). In order to show pretext, Plaintiff must show "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

### III. Analysis

Plaintiff initially filed four causes of action: (1) pregnancy discrimination; (2) failure to accommodate; (3) violation of public policy; and (4) retaliation. Defendant seeks summary judgment on all causes of action. In her Opposition, Plaintiff abandoned three causes of action: failure to accommodate, violation of public policy, and retaliation.

In contrast, Plaintiff opposes Defendant's Motion for Summary Judgment with regard to her claim of pregnancy discrimination. Plaintiff successfully demonstrates a *prima facie* case of pregnancy discrimination. Neither party contests that Plaintiff was pregnant, discharged and replaced by a nonpregnant person. Likewise, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination: "it would be more efficient, more productive, and better for team and business synergies and cohesiveness to have all of the maintenance coordinators work together at the same location where [their supervisors] worked rather than managing both a central office and a satellite office."

However, the Court finds that Plaintiff fails to present an issue of material fact as to whether the business rationale set forth by Defendant was only a pretext for unlawful discrimination. Plaintiff initially attempts to demonstrate pretext by citing two conversations in which Defendant allegedly stated that Plaintiff's position would not be relocated to Columbus. First, on February 6, 2004, McCure informed Plaintiff and George Young that their positions would not be relocated.

Case No. 5:06-cv-1436
Gwin, J.

This email was sent approximately two years prior to Defendant's eventual decision to relocate Plaintiff's position. As such, it bears virtually no temporal relevance to the events surrounding Plaintiff's termination.

Second, when Young was being considered for the position of construction coordinator during August 2005, Young was told that his promotion would not effect Plaintiff's position in Twinsburg. Although more temporally relevant, this conversation still took place approximately five months prior to Defendant's termination of Plaintiff. Defendant initially raised the issue of relocating Plaintiff's position in 2002 and numerous other employees relocated to Columbus during the four years prior to Plaintiff's termination. As such, the fact that Defendant had not yet contemplated a forced relocation of Plaintiff's position five months prior to the actual decision remains unremarkable.

Plaintiff also tries to demonstrate pretext through Roy's attitude regarding her repeated requests to leave early or take off work to care for her children. In response to questioning as to whether Defendant permitted her to take time off work, Plaintiff answered, "Rob didn't always like it, but yes." Roy's sentiment does not constitute animus. Given that Plaintiff made such requests on approximately 20 to 25 occasions, it would be more than reasonable for any employer to express mild dissatisfaction purely as a result Plaintiff's reduced productivity. Additionally, Defendant never denied Plaintiff's requests nor disciplined Plaintiff for her repeated absences. To suggest that an employer becomes vulnerable to claims of discrimination merely because he or she disapproves of an employee's frequently leaving work early is unreasonable.

Plaintiff's strongest evidence that the business rationale set forth by Defendant was only a pretext for unlawful discrimination is Roy's response when Plaintiff informed him that she was

Case No. 5:06-cv-1436
Gwin, J.

pregnant. Plaintiff testified: "I told him – I called him on the phone and told him I was pregnant and his response to me was, 'Again so soon?' And then he asked me if this was planned, if I planned the pregnancy and then he said, 'Congratulations I guess.'" Roy's comment is subject to multiple interpretations. Notably, Roy's response is entirely consistent with Defendant's claim that the decision to relocate Plaintiff's position was made in late January.

However, even viewing these facts in the light most favorable to the plaintiff, Roy's comment evinces surprise and mild disapproval at worst. When considered along with Roy's August assurance to Young that Plaintiff's position would not be relocated, this evidence still fails to establish a genuine issue of material fact as to whether the business rationale set forth by Defendant was only a pretext for unlawful discrimination.

Finally, Plaintiff argues that Defendant's proffered business reasons are insufficient to motivate her discharge, stating "Everything I did was over the phone or via email. . . There was just no other reason. There was no reason to move my position." Plaintiff buttresses her opinion with Young's testimony that he knows nothing that would prevent a maintenance coordinator from effectively performing his or her duties from Twinsburg.

However, beyond the bald assertions of Plaintiff and her former co-worker, Plaintiff presents no evidence as to why Defendant's proffered business reasons were insufficient to motivate the relocation of Plaintiff's position. In contrast, Defendant notes that (1) all four of Plaintiff's fellow maintenance coordinators work in Defendant's Columbus headquarters; (2) both of Plaintiff's direct supervisors work in Columbus; and (3) Defendant has encouraged all its Twinsburg employees to relocate to Columbus throughout the past four years. Additionally, Roy's electronic notes from January 24, 2006, list seven reasons for centralizing the management team location: (1) weekly

Case No. 5:06-cv-1436
Gwin, J.

meetings; (2) team interaction and team building; (3) sharing best practices and mentoring; (4) invoices, sorting, timely payments; (5) relationships with other departments such as real estate, A/P, marketing, environment; (6) interaction with management; and (7) support and coverage when others are out. Plaintiff has makes no attempt to disprove any of these rationales.

In total, Plaintiff presents little evidence establishing a genuine issue of material fact sufficient to justify a denial of Defendant's Motion for Summary Judgment. Plaintiff makes no complaint regarding Defendant's treatment during her second pregnancy. Defendant provided Plaintiff a twelve-week maternity leave and permitted Plaintiff to work from home. Likewise, Defendant granted Plaintiff's requests to leave early or take time off to care for her children on approximately 20 to 25 occasions. Defendant also allowed Plaintiff to take additional time off work to tend to her mother's illness and other personal matters. Defendant never penalized Plaintiff for these absences. Instead, Defendant increased Plaintiff's salary in 2004 and 2005.

Upon deciding that Plaintiff's position would be relocated to Columbus, Defendant did not immediately terminate Plaintiff. Rather, Defendant offered Plaintiff the opportunity to maintain her current position if she was willing to relocate. After Plaintiff refused this offer, the defendant endeavored to find Plaintiff another position internally or with one of the company's external vendors. When these efforts failed, Defendant offered Plaintiff a severance package, which she also refused. Importantly, upon terminating the plaintiff, Defendant hired another female maintenance coordinator with children who was willing to work in Columbus. In fact, all five current maintenance coordinators employed by Defendant are female, and four of the five maintenance coordinators have children.

In light of this evidence, Plaintiff fails to demonstrate that Defendant's proffered business

Case No. 5:06-cv-1436
Gwin, J.

reason for Plaintiff's discharge (1) had no basis in fact; (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge. As such, Plaintiff fails to establish a genuine issue of material fact sufficient to justify a denial of Defendant's Motion for Summary Judgment.

### IV. Conclusion

For all of the aforementioned reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.


Dated: April 30, 2007                           s/        *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE